942

ture payments to bring them into the high tax brackets of Mertens' large earning period, is by an algebraic formula, unwarranted even if his income had been on an accrual basis.

■ An accrual future tax payment is a reducing to a present valuation of the promises of future performance. Such present worth of future tax payments could be subject to an algebraic formula only if, on looking forward, it is assumed that each successive annual tax on the Loew's tax payment of the taxes of the previous year was on the same successive incomes in the same income brackets in each year.

■ Undoubtedly when Loew's would make the payment in the succeeding tax period Loew's would again be liable to pay a tax thereon, but only if and insofar as it *contributed to net income* in that succeeding period. However, no one could tell whether there would be a net income in the succeeding tax period. Mertens in that period may have losses overcoming his gain of the first tax payment by Loew's in which event Loew's would be obligated to pay nothing then or thereafter. If there were a net gain for this first succeeding period no one could tell how much the net gain would be or in what income bracket it would fall and hence what amount of it Loew's would pay. If any were paid by Loew's it would create a diminished liability payable in a succeeding tax period. True, the process would continue in successive years or period, as long as net income would continue, until Loew's obligation became *de minimis,* but when that would be or how much the total payments, no one looking forward could compute on an algebraic formula or otherwise.

Nor was there any attempt at tax evasion in Mertens' accepting a loan from Loew's to meet such uncertain future tax liabilities of a sum much larger than necessary to cover them,—here large enough to cover the demand of tax from Mrs. Mertens which, as seen, Loew's had not contracted to pay.

Mertens at first strongly objected to such a loan transaction. He wanted to be *paid* the money to hold as his own. However, the testimony of a witness before Judge Yankwich shows that shortly before Mertens departed he agreed to accept the money from Loew's as a loan and the court so found and also that the moneys paid to the Collector were from moneys so loaned.

Since the district court heard the testimony of this witness and, having the opportunity to judge of his credibility, accepted his testimony as true, we cannot say that the findings as to the loan and the payment to the Collector from it are clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c. On the testimony the findings are clearly supported.

It follows that there is no merit in the Collector's contention that the payment by Mertens on September 7, 1938, of the money demanded by the Commissioner on September 6, 1938, for the income up to September 1, 1938, was a tax payment *by Loew's,* even if not legally demanded. It was a loan properly made in view of the uncertainties of Loew's future liabilities, solely for the taxes legally assessed.

The judgments in favor of Mertens and Mrs. Mertens are affirmed.

MANDERS v. LYKES BROS. S. S. CO., Inc.

No. 189.

Circuit Court of Appeals, Second Circuit.

Feb. 25, 1946.

Jacob Rassner, of New York City, for appellant.

Arthur B. Boal and Tompkins, Boal & Tompkins, all of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

PER CURIAM.

 So far as concerns the action for indemnity, the exceptions are frivolous. After verdict we must assume that the plaintiff never asked for a new knife, but chose to use his own. How that could charge the ship we cannot understand. The same applies to the court's remark about assuming any risk involved in his continued use of the knife: the question was not of such an assumption's excusing any fault of the ship, but whether the ship was at fault at all, if the plaintiff did not ask for a substitute; as plainly it was not. The motion that the plaintiff was entitled to a directed verdict in his favor, because the jury was bound to accept his story, deserves no discussion. The plaintiff had his day in court before a jury which did not believe him, and that ends it.

So far as concerns the cause of action for maintenance and cure, it does not appear that, when the plaintiff went to the hospital between September 3rd and October 9th, he went for any treatment of his hand. True, an x-ray picture of it was then taken, but that was not treatment, but a precaution.

Judgment affirmed.

Ex parte DUNCAN.

KAHANAMOKU, Sheriff, v. DUNCAN.

No. 10763.

Circuit Court of Appeals, Ninth Circuit. March 1, 1946.

Nunc pro Tunc as of Nov. 1, 1944.

For majority opinion, see 146 F.2d 576.

Before WILBUR, GARRECHT, DENMAN, MATHEWS, STEPHENS and HEALY, Circuit Judges.

STEPHENS, Circuit Judge (dissenting).

In the conference held after the oral argument made to the Judges of this court sitting en banc in the above entitled case and its associate case Steer et al. v. White, 146 F.2d 576, I expressed the view that the judgments should be affirmed. My associates, however, were of the opinion that they should be reversed. Thereafter I prepared and distributed to the court members an opinion in the Duncan case, in support of my views. The court filed its opinion and decision reversing in both cases. I was keenly aware of the fact that the war was yet to be won and that a dissenting opinion in these cases held more possibility of harm than of good and I withheld it.

Now that the war is over and the Supreme Court has filed its opinion and decision (66 S.Ct. 606) there is nothing to be gained by further withholding it.

The opinion is the result of intensive reading and study and is thoroughly documented. I believe it to be a substantial contribution to the history of one of the most unique and important episodes in our nation's existence. For the reason stated and because I desire my position made clear I have sought and obtained approval of our Senior Judge for filing it with the clerk of the court at this time.

This is an appeal by the respondent from the order of the United States District Court for the Territory of Hawaii in an Habeas Corpus proceeding, directing that the appellee, Lloyd C. Duncan, be released from the custody of the appellant. Pending the hearing in the district court appellee was released on bail, and pending this appeal he was released on his own recognizance.

Duncan, a civilian workman in the Navy Yard at Pearl Harbor, Territory of Hawaii, was arrested by the naval authorities for an attack upon two marines, who were stationed as guards at a navy yard gate. He was taken before a naval officer, sitting as a Provost Judge, was tried, found guilty and sentenced to six months imprisonment. He was committed to the Sheriff of the City and County of Honolulu, respondent-appellant, and by